UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

**CRISTIAN LEMUS LOPEZ,**

    **Petitioner,**

v.                                                **Civil Action No. 2:25-cv-764**

**KRISTI NOEM, et al.,**

    **Respondents.**

## REPORT AND RECOMMENDATION

Petitioner Cristian Lemus Lopez ("Petitioner" or "Lopez") brings this three-count Amended Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241, (ECF No. 19)[1], against Respondents Kristi Noem, Pamela Jo Bondi, Todd M. Lyons, Robert Guadian, and Jeffrey Crawford (collectively "Respondents"),[2] challenging the legality of his detention by United States Immigrations and Customs Enforcement ("ICE"). First, Petitioner alleges Respondents violated the Immigration and Nationality Act ("INA") by applying 8 U.S.C. § 1225(b)(2)(A) instead of 8 U.S.C. § 1226(a) to his case and unlawfully mandating his continued detention without a bond hearing. Id. ¶¶ 46-48 (ECF No. 19, at 10). Second, Plaintiff alleges Respondents similarly violated the INA's bond regulations by applying § 1225(b)(2). Id. ¶¶ 49-52 (ECF No. 19, at 11). Finally, Plaintiff alleges that his detention without a bond hearing violated his due process rights. Id. ¶¶ 53-

---

[1] Petitioner filed his initial Petition on November 19, 2025, and the first Amended Petition on November 20, 2025, in the United States District Court for the District of Maryland. (ECF Nos. 1, 4). The case was transferred from the District of Maryland on November 25, 2025. (ECF Nos. 12, 13). Pursuant to this court's January 2, 2026 Order, (ECF No. 18), Petitioner filed this Amended Petition identifying the appropriate Virginia custodians as Respondents. Apart from removing the section seeking an Order to Show Cause under 28 U.S.C. § 2243 due to the court's finding in the January 2, 2026 Order that the three-day response period under § 2243 is insufficient, (ECF No. 18, at 2 n. 2), the Amended Petition before the court now is largely unchanged from the Amended Petition filed earlier in the District of Maryland.

[2] Petitioner initially named Nikita Baker, Acting Field Office Director of the ICE Baltimore Field Office, as the Petitioner's immediate custodian but subsequently removed her as a named party and replaced her with Respondents Robbert Guadian and Jeffrey Crawford in the Amended Petition filed in this court following the transfer of the case from Maryland to Virginia. The Government's briefing still lists Nikita Baker as a Respondent despite her no longer being a party to the case.

1

36 (ECF No. 19, at 11-12). Respondents filed a Motion to Dismiss the Petition, (ECF No. 25), and a combined memorandum in response to the Amended Petition and in support of this Motion, (ECF No. 24), arguing that Petitioner should be subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) because he is an "applicant for admission" that has not been inspected or lawfully admitted to the United States. Petitioner responded, reiterating his arguments and noting that the Government's interpretation of the statutes is incorrect since Petitioner is not "seeking admission" and has been a resident of the country since 2012. Pet'r's Resp. to Resp'ts' Mot. to Dismiss ("Pet'r' Opp'n") (ECF No. 27, at 1-2). For the reasons below, the undersigned recommends that the court GRANT the Amended Petition, (ECF No. 19), DENY Respondents' Motion to Dismiss, (ECF No. 25), and order Respondents to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a).

## I.  FACTUAL BACKGROUND

Lopez is a 33-year-old citizen of Honduras currently detained at the Farmville Detention Center in Virginia, for entering the southern border of the United States unlawfully. Am. Pet. ¶ 13 (ECF No. 19, at 3); Decl. of Justin Richardson ("Richardson Decl.") ¶ 5 (ECF No. 24-1, at 2). During a traffic stop on November 19, 2025, Enforcement and Removal Operations ("ERO") officers determined Petitioner was present in the United States without being admitted or paroled, in violation of 8 U.S.C. § 1182(a)(6)(A)(i). Richardson Decl. ¶ 6 (ECF No. 24-1, at 2). Therefore, Petitioner was taken into civil immigration custody and eventually detained at the Farmville Detention Center for mandatory detention and was served with a Notice to Appear ("NTA")[3] to defend against the charge under § 1182(a)(6)(A)(i). Id. ¶¶ 6-7 (ECF No. 24-1, at 2-3).

---

[3] An NTA is a "[c]harging document" that "initiates a proceeding before an Immigration Judge." 8 C.F.R § 1003.13.

On December 18, 2025, during a master calendar hearing, Petitioner, through counsel, admitted to the allegations in the NTA and conceded the charge of removal. Id. ¶¶ 8-9 (ECF No. 24-1, at 3). The Immigration Judge ("IJ") sustained the removal charge and scheduled an individual hearing for January 15, 2026. Id. ¶ 9. On December 18, 2025, Petitioner filed a Form EOIR-42B, Application for Cancellation of Removal and Adjustment Status for Certain Nonpermanent Residents, and later on January 7, Petitioner filed a Form I-589, Application for Asylum and for Withholding of Removal. Id. ¶¶ 10-11. Petitioner's individual hearing was continued to January 28, 2026, "for the consideration and adjudication of his application for relief from removal." Id. ¶ 12.

Lopez's Amended Petition, filed January 8, 2026, challenges his detention, arguing ICE impermissibly applied 8 U.S.C. § 1225. Accordingly, he seeks an Order releasing him, or in the alternative, providing him with a bond hearing pursuant to 8 U.S.C. § 1226(a). Am. Pet. (ECF No. 19, at 12). Respondents filed a Motion to Dismiss the Petition on January 15, 2026, for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). Fed. Resp'ts' Mot. to Dismiss (ECF No. 25). The Government argues that Lopez is an applicant for admission and thus should be subject to mandatory detention under 8 U.S.C. § 1225. Fed. Resp'ts' Resp. to Pet. Writ of Habeas Corpus & Mem. Supp. Mot. to Dismiss ("Resp'ts' Mem.") (ECF No. 24, at 1-2). Petitioner opposed the Government's motion, refuting Respondents' interpretation and application of the relevant statutes. Pet'r's Opp'n (ECF No. 27, at 1-2).

## II. STANDARD OF REVIEW

A motion to dismiss "challenges the legal sufficiency of a complaint considered with the assumption that the facts alleged are true." Francis v. Giacomelli, 588 F.3d 186, 192 (4th Cir. 2009) (internal citations omitted) (discussing Fed. R. Civ. P. 12(b)(6)); see also Goard v. Crown

3

Auto, Inc., 170 F. Supp. 3d 915, 917 (W.D. Va. 2016) (noting that a "motion to dismiss tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim"). A complaint is subject to dismissal if it does not "contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (cleaned up)). Factual allegations cannot require speculation or merely be conceivable. See Iqbal, 556 U.S. at 678; Twombly, 550 U.S. at 555. This inquiry is "context-specific." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 256 (4th Cir. 2009).

In considering a motion to dismiss, the "court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint." E. I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 440 (4th Cir. 2011) (citing Sec'y of State for Defence v. Trimble Navigation Ltd., 484 F.3d 700, 705 (4th Cir. 2007); Phillips v. LCI Int'l Inc., 190 F.3d 609, 618 (4th Cir. 1999)). The court "may consider documents attached to the complaint or the motion to dismiss so long as they are integral to the complaint and authentic." Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty., 684 F.3d 462, 467 (4th Cir. 2012) (quoting Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009)) (cleaned up).

### III.   ANALYSIS

**A.   Lopez's detention is governed by the discretionary detention provisions in 8 U.S.C. § 1226(a) and he is thus entitled to a bond hearing.**

The central question of Lopez's Amended Petition[4] is whether as a noncitizen who entered the United States without inspection he is entitled to a bond hearing under 8 U.S.C. § 1226(a) or whether he is subject to the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A).

---

[4] Respondents do not make a failure to exhaust argument, and thus they waive any argument on this point. However, the court briefly notes that even if Respondents raised an exhaustion defense, they would not prevail because Petitioner is not required to exhaust his administrative remedies here. Ordinarily, federal prisoners must exhaust their

4

Under the relevant statutory scheme, there are generally three forms of detention for the vast majority of noncitizens in removal proceedings, and two of those three are relevant to the issue here.[5] First, pursuant to 8 U.S.C. § 1225, a noncitizen "applicant for admission"—defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States"—that is "seeking admission [and] is not clearly and beyond a doubt entitled to be admitted," is subject to mandatory detention. 8 U.S.C. § 1225(a)(1), (b)(1)-(2). Under 8 U.S.C. § 1226(a), "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision of whether the alien is to be removed from the United States." Id. § 1226(a); see also id. § 1229(a). These noncitizens are generally entitled to a bond hearing before their detention. See 8 C.F.R. §§1003.19(a), 1236.1(a). This form of discretionary detention is the "default rule" for the detention of noncitizens "already present in the United States." Quispe-Ardiles v. Noem, No. 1:25-cv-01382, 2025 WL 2783800, at *5 (E.D. Va. Sept. 30, 2025) (quoting Jennings v. Rodriguez, 583 U.S. 281, 303 (2018)); see also Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) (explaining that individuals who reside in this country

---

administrative remedies prior to filing federal habeas petitions. McClung v. Shearin, 90 F. App'x 444, 445 (4th Cir. 2004) (unpublished per curiam opinion); see also Timms v. Johns, 627 F.3d 525, 530-31 (4th Cir. 2010); Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996). However, the exhaustion requirement in habeas actions under § 2241 is judicially imposed and non-jurisdictional. See Santiago-Lugo v. Warden, 785 F.3d 467, 471, 474 (11th Cir. 2015); see also Boumediene v. Bush, 553 U.S. 723, 793 (2008) (observing that although "there is no jurisdictional bar[,] . . . the question remains whether there are prudential barriers to habeas corpus review under these circumstances"). Thus, the court may waive exhaustion in certain circumstances including situations of irreparable harm, futility, or a predetermined outcome. Here, Petitioner correctly argues that he need not exhaust his administrative remedies because doing so would be futile. Am. Pet. ¶ 41 (ECF No. 19, at 9). Respondents' insistence that Matter of Hurtado remains binding precedent renders any administrate attempt by Petitioner to seek a bond hearing futile. See, e.g., Ortega Miranda v. Bondi, et al., No. 3:25-cv-769, 2026 WL 287179, at *5 (E.D. Va. Feb. 3, 2026); Duarte Escobar v. Perry, No. 3:25-cv-758, 2025 WL 3006742, at *5 (E.D. Va. Oct. 27, 2025); Contreras Perez v. Noem, No. 3:25-cv-882, 2025 WL 3281774, at *3 n. 8 (E.D. Va. Nov. 25, 2025); Campos-Flores v. Bondi, No. 3:25-cv-797, 2025 WL 3461551, at *4 n. 14 (E.D. Va. Dec. 2, 2025).

[5] The third form of detention of noncitizens involves those who are subject to a final order of removal. 8 U.S.C. § 1231. These noncitizens are not entitled to a bond hearing but may be entitled to seek release from prolonged detention awaiting removal. See Zadvydas v. Davis, 533 U.S. 678, 682, 701 (2001)

but did not lawfully enter are subject to detention under 8 U.S.C. § 1226(a) rather than § 1225). Thus, a noncitizen under this statutory provision may be out on conditional parole or bond, unless the noncitizen has been involved in certain criminal offenses or terrorist activities. See 8 U.S.C. § 1226(a)(1)-(2), (c).

On July 8, 2025, ICE issued a new policy entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," and subsequently the Board of Immigration Appeals ("BIA") released a precedential decision in the Matter of Yajure Hurtado, 29 I. & N. Dec. 216 (BIA 2025), both of which reinterpreted and upended this longstanding statutory framework by determining that the mandatory detention provisions of 8 U.S.C. § 1225 apply to all noncitizens who unlawfully entered the United States without inspection, even those noncitizens that have been in the United States for an extended period of time and would have normally been subject to discretionary detention following a bond hearing under 8 U.S.C. § 1226(a). As such, ICE has been classifying all noncitizens who "entered the United States without inspection as noncitizens 'seeking admission,' no matter how much time has passed between their entrance into the United States and their apprehension by law enforcement." Ortega Miranda v. Bondi, et al., No. 3:25-cv-769, 2026 WL 287179, at *4 (E.D. Va. Feb. 3, 2026). In this recommended decision, however, I join the growing number of district courts rejecting Respondents' expansive application of 8 U.S.C. § 1225(b).

Petitioner argues that his detention under 8 U.S.C. § 1225(b) violates the INA because as an individual who previously entered and is now residing in the United States, he should be subject to 8 U.S.C. § 1226(a) and thus afforded a bond hearing and the opportunity for release on conditional parole or bond under the plain language of the statute. Am. Pet. ¶¶ 34-37 (ECF No. 19, at 2, 8-9). Respondents argue that Petitioner is an applicant for admission that is actively

"seeking admission" because he entered and remains in the United States without being inspected or lawfully admitted, and thus he should be detained without a bond hearing pursuant to 8 U.S.C § 1225(b)(2)(A). Resp'ts' Mem. (ECF No. 24, at 7-8, 10) (citing Quispe v. Crawford, No. 1:25-cv-1471, 2025 WL 2783799, at *4-5 (E.D. Va. Sept. 29, 2025); Jennings v. Rodriguez, 583 U.S. 281, 288 (2018); Vargas Lopez v. Trump, 802 F. Supp. 3d 1132, 1141 (D. Neb. 2025)). Respondents also rely on the Fourth Circuit decision in Jimenez-Rodriguez v. Garland, 996 F.3d 190 (4th Cir. 2021), but the petitioner in that case was actively seeking admission and lawful status by applying for a U-visa and submitting a waiver for inadmissibility. Id. at 191-93. Petitioner here, however, has not taken any action to actively seek admission. Respondents justify relying on these types of case because Petitioner entered the United States without inspection like the petitioners in Jiminez-Rodriguez and similar cases, but the similarities stop there. See Resp'ts' Mem. (ECF No. 24, at 12). After analyzing Congressional intent, changes in language, and the statutory scheme prior to the enactment of Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Respondents also argue that it was Congress' intent under IIRIRA to apply 8 U.S.C. § 1225(b)(2)(A) to migrants like Petitioners. Id. at 16-21. However, Respondents concede that federal courts have overwhelmingly rejected their interpretation of the INA's detention authorities. See Resp'ts' Mem. (ECF No. 24, at 2) (citing Hasan v. Crawford, 800 F. Supp. 3d 641 (E.D. Va. 2025); Garcia v. Noem, No. 1:25-cv-1712, 2025 WL 3111223 (E.D. Va. Nov. 6, 2025); Quispe-Ardiles v. Noem, No. 1:25-CV-01382, 2025 WL 2783800 (E.D. Va. Sept. 30, 2025); Quispe v. Crawford, No. 1:25-cv-1471, 2025 WL 2783799 (E.D. Va. Sept. 29, 2025)); see also Am. Pet. ¶¶ 30-33 (ECF No. 19, at 6-8). As such, petitioners that are long-time residents of the United States should be subject to the discretionary detention provisions of 8 U.S.C. § 1226(a).

In this case, 8 U.S.C. § 1226(a) governs Petitioner's detention and requires a bond hearing. Other courts in this District have already explained the intricacies and application of 8 U.S.C. §§ 1225 and 1226 to noncitizen detentions. See, e.g., Hasan, 800 F. Supp. 3d at 651-52. "[N]oncitizens detained under Section 1225(b)(2) must remain in custody for the duration of their removal proceedings, while those detained under Section 1226(a) are entitled to a bond hearing before an IJ at any time before entry of a final removal order." Rodriguez v. Bostock, 779 F. Supp. 3d 1239, 1247 (W. D. Wash. 2025). And the Supreme Court clarified that 8 U.S.C. § 1225(b) governs noncitizens "seeking admission into the country," whereas 8 U.S.C. § 1226(a) applies to noncitizens "already in the country" who are now subject to a form of removal proceedings. Jennings v. Rodriguez, 583 U.S. 281, 289 (2018). As such, 8 U.S.C. § 1226 acts as the "default rule" for the detention of noncitizens already residing in the United States. Id. at 303. Given this Supreme Court language, the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) does not apply to Petitioner since he has been residing in the country for over a decade.

Respondents also briefly make a statutory interpretation argument that the specific mandatory language of 8 U.S.C. § 1225(b) governs over the more general provisions of 8 U.S.C. § 1226(a) since § 1225 contains stronger mandatory language. Resp'ts' Mem. (ECF No. 24, at 14) (citing In re Wright, 826 F. 3d 774, 779 (4th Cir 2016)). However, applying this interpretative cannon and adopting Respondents' interpretation of the statutes that a noncitizen's presence in the United States means they are actively seeking admission would impermissibly "render another provision of the INA entirely defunct." Ortega Miranda v. Bondi, et al., No. 3:25-cv-769, 2026 WL 287179, at *6-7 (E.D. Va. Feb. 3, 2026). Additionally, "the differences between § 1225 and § 1226 do not indicate the former should prevail over the latter—rather, they indicate that Congress intended for different classes of noncitizens to be subject to each provision, i.e., mandatory versus

discretionary detention." Vasquez v. Feeley, No. 25-cv-1542, 2025 WL 2676082, at *14 (D. Nev. Sept. 17, 2025). As such, I recommend the court reject Respondents' statutory interpretation arguments and find that Petitioner's detention is governed by 8 U.S.C. § 1226(a)'s discretionary framework as opposed to 8 U.S.C. § 1225(b)'s mandatory detention procedures. See Ortega Miranda, 2026 WL 287179, at *9.

**B.    Continued detention of Lopez without a bond hearing violates his right to procedural due process under the Fifth Amendment.**

Lopez is entitled to the due process protections of the Fifth Amendment. Respondents argue that Petitioner—as an applicant for admission—is not entitled to any additional due process beyond what is provided by the INA, and thus there is no due process violation. Resp'ts' Mem. (ECF No. 24, at 2, 21-24) (citing Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 138 (2020)). Specifically, Respondents note that Congress did not mention a bond hearing requirement or a maximum period of time that noncitizens could be held in mandatory detention without a bond hearing in the INA. Id. at 21 (citing 8 U.S.C. § 1225(b)(2)(A); Jennings v. Rodriguez, 583 U.S. 281, 297 (2018)). However, the cases Respondents cite to address noncitizens detained under 8 U.S.C. § 1225 at the threshold of entry into the United States rather than noncitizens who have been long-time residents in the United States at the time of their apprehension.[6] In fact, all of Respondents' due process arguments rely on detention under 8 U.S.C. § 1225 and do not apply to

---

[6] None of the cases Respondents rely on address noncitizens like Petitioner who have resided in the United States for years but have yet to obtain legal status. See, e.g., Dep't of Homeland Sec. v. Thuraissigiam, 591 U.S. 103, 139 (2020) (holding that the respondent was apprehended twenty-five yards from the border while attempting to enter the country illegally and was thus not entitled to procedural rights other than those afforded by statute); Nishimura Ekiu v. United States, 142 U.S. 651, 658 (1892) (discussing the due process rights of a Japanese woman who was not permitted to land in the United States and detained upon arrival to San Francisco); Pipa-Aquise v. Bondi, No. 1:25-cv-1094, 2025 WL 2490657, at *1 (E.D. Va. Aug. 5, 2025) (holding that the petitioner, detained pursuant to § 1225(b), is entitled to rights Congress has statutorily provided rather than rights under the Due Process Clause); Olaya Rodriguez v. Bondi, No. 1:25-cv-791, 2025 WL 2490670, at *1 (E.D. Va. June 24, 2025) (same); Aslanturk v. Hott, 459 F. Supp. 3d 681, 693 (E.D. Va. 2020) (noting that "due process rights flow from those prescribed by Congress" when the petitioner is "a self-described 'arriving alien'").

Lopez. "[O]nce an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). As the court noted earlier, Petitioner is a noncitizen subject to 8 U.S.C. § 1226 discretionary detention, not 8 U.S.C. § 1225 mandatory detention, that has lived in the United States for over thirteen years and is thus afforded due process protections from the Fifth Amendment. Hasan v. Crawford, 800 F. Supp. 3d 641, 661 (E.D. Va. 2025); Quispe v. Crawford, No. 1:25-cv-1471, 2025 WL 2783799, at *9 (E.D. Va. Sept. 29, 2025). Even if Petitioner's due process rights were derived from the INA, Respondents improperly rely on "their faulty conclusion that § 1225 constitutes the appropriate regulation in this matter" rather than § 1226, and continued detention would still be a violation of Lopez's due process rights. Ortega Miranda v. Bondi, et al., No. 3:25-cv-769, 2026 WL 287179, at *10 (E.D. Va. Feb. 3, 2026).

The Fifth Amendment of the United States Constitution provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. "To determine whether civil detention violates a detainee's Fifth Amendment procedural due process rights, courts apply the familiar three-part test articulated in Mathews v. Eldridge." Hasan, 800 F. Supp. 3d at 659 (citing 424 U.S. 319 (1976)). Courts weigh the following three factors under Mathews: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. In this case, all three of the Mathews factors weigh in Petitioner's favor.

First, holding Lopez in mandatory detention without a bond hearing substantially risks an erroneous deprivation of his liberty interest in "being free from physical detention." See Hasan, 800 F. Supp. 3d at 659 (quoting Hamdi v. Rumsfeld, 542 U.S. 507, 529 (2004)). Additionally, the conditions of detainment are part of the assessment of the first Mathews factor and "experiencing all the deprivations of incarceration," such as mental health concerns or the lack of privacy, all support Lopez's claim of a procedural due process violation. Id. (quoting Günaydin v. Trump, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025)). Although Respondents concede that freedom from government custody is a protected liberty interest under the Due Process Clause, they argue that Petitioner's liberty interest should be given less weight because he is a noncitizen subject to removal proceedings. Resp'ts' Mem. (ECF No. 24, at 26-27) (citing Wilson v. Zeithern, 265 F. Supp. 2d 628, 635 (E.D. Va. 2003); Hong v. United States, 244 F. Supp. 2d 627, 635 (E.D. Va. 2003); United States v. Guzman, 998 F.3d 562, 69 (4th Cir. 2021)). However, Respondents again rely on cases where the noncitizen at issue was stopped near the threshold of initial entry near the United States border rather than those already present in the United States. See Guzman, 998 F.3d at 569 (distinguishing between "an alien who has already effected an entry in the United States" and an "alien who tried to enter the country illegally"). Thus, Respondents have failed to demonstrate how Petitioner's immigration status forecloses his entitlement to a bond hearing. See Ortega Miranda v. Bondi, et al., No. 3:25-cv-769, 2026 WL 287179, at *11 (E.D. Va. Feb. 3, 2026). Accordingly, the first Mathews factor supports Lopez's claim of a procedural due process violation.

Second, the lack of a bond hearing further risks erroneous deprivation of Petitioner's due process rights. See id. Respondents argue that individuals like Lopez detained under 8 U.S.C. § 1225(b)(2)(A) have the ability to seek parole as an additional procedural safeguard that mitigates

the risk of erroneous deprivation of a liberty interest. Resp'ts' Mem. (ECF No. 24, at 27). However, since I recommend the court apply § 1226(a) to Petitioner's detention, he should have a bond hearing, and the lack of such a hearing deprives Lopez of even the minimum process to which he is entitled. See Ortega Miranda, 2026 WL 287179, at *11.

Finally, Respondents have failed to demonstrate a compelling government interest in Lopez's mandatory detention without a bond hearing. See id. Respondents argue there is a significant government interest in the mandatory detention of non-criminal immigrants unlawfully present in the country. Resp'ts' Mem. (ECF No. 24, at 27-28) (citing Miranda v. Garland, 34 F.4th 338, 364 (4th Cir. 2022)). They also argue a public interest in promptly executing removal orders. Although these are legitimate government interests, Respondents fail to explain why those interests would not be adequately protected with a bond hearing with an immigration judge under § 1226(a). See Ortega Miranda, 2026 WL 287179, at *11. Accordingly, all three Mathews factors weigh in Petitioner's favor and Petitioner's procedural due process rights would be violated without a bond hearing.[7]

### III. CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends the court GRANT the Amended Petition, (ECF No. 19), DENY Respondents' Motion to Dismiss, (ECF No. 25), and order a bond hearing for Petitioner under 8 U.S.C. § 1226(a) and its implementing regulations, which are adequate to protect the Government's interest in his future appearance. See 8 C.F.R. § 236.1; In re Guerra, 24 I. & N. Dec. 37, 40 (BIA 2006) ("In general, an Immigration Judge must consider

---

[7] Because the court finds that Petitioner's Fifth Amendment procedural due process rights would be violated without a bond hearing, the court need not address Petitioner's substantive due process rights arguments. Ortega Miranda, 2026 WL 287179, at *1 n. 2; Campos-Flores v. Bondi, 2025 WL 3461551, at *6 n.18 (E.D. Va. Dec. 2, 2025)

whether an alien who seeks a change in custody status is a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.").

## IV.    REVIEW PROCEDURES

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, see 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with a copy thereof. See Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2.    A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this court based on such findings and recommendations. Thomas v. Arn, 474 U.S. 140 (1985); Carr v. Hutto, 737 F.2d 433 (4th Cir. 1984); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

February 12, 2026

Norfolk, Virginia

13